[Crim. No. 42914. Second Dist., Div. Two. May 30, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW J. OLIVER, Defendant and Appellant.

**COUNSEL**

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, and Jill Ishida, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow and Andrew D. Amerson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—Appellant was found guilty by a jury of first degree murder (Pen. Code, § 187) and of arson (Pen. Code, § 451, subdivision (b)). An

alleged special circumstance that the murder was committed while appellant was engaged in the commission of arson (Pen. Code, § 190.2, subdivision (a)(17)(viii)) was also found to be true. He was sentenced to state prison for life without possibility of parole on account of the murder with special circumstance, and for a concurrent term of five years in connection with the arson.

The facts giving rise to the prosecution were these. Appellant, a disabled person required to use a wheelchair, met Sandra Whalen, his neighbor, in September of 1981, when he was 18 years of age and, after the two had seen one another on an every-other-day basis for several months, proposed marriage to her in January of 1982. A ring he simultaneously bestowed, however, was returned a day later with Ms. Whalen's statement she did not then wish to marry anyone. Disgruntled over the refusal, appellant on January 21, 1982, spoke with his brother-in-law Orlan Douglas and, independently, with two teenage boys who lived in the area, indicating he wanted to get even with Ms. Whalen through the device of a Molotov cocktail launched into her home either by himself or, for a payment of $50 to each, by the boys, a further aspect of the plan being appellant would shoot whoever might emerge from the structure. Appellant's offer was declined.

Thereafter, in the early morning hours of January 24, 1982, appellant parked his car in front of Ms. Whalen's home and proceeded with a gas can toward a nearby gas station, meeting one of the teenage boys on the way. Having obtained gasoline, he returned to the Whalen residence with the boy, fashioned a Molotov cocktail from an empty orange juice bottle, and upon the further refusal of his companion to be affirmatively involved in the matter, threw the flaming missile into the house. Leon Glover, a guest occupying one of the bedrooms therein, perished in the resulting fire.

It is contended on the appeal that:

1. The trial court erroneously instructed the jury on felony murder.

2. The felony-murder rule is both unsound as a matter of public policy and unconstitutional and should be abrogated by this court.

3. The life without possibility of parole sentence must be reversed because Penal Code section 190.2, subdivision (a)(17)(viii), the arson special circumstance, is unconstitutionally vague.

4. The life without possibility of parole sentence must be reversed because the prosecution did not charge a violation of Penal Code section 447.

5. The life without possibility of parole sentence must be reversed because the elements of the special circumstance were not proved.

6. The trial court erroneously instructed the jury on the felony-murder special circumstance as it failed to state that the jury had to find the murder was committed in order to advance the independent felonious purpose.

7. Fundamental principles of statutory construction require that Penal Code section 190.2, subdivision (a)(17) be construed to require the finding of an intentional killing before a special circumstance may be found true.

8. The mandatory provision of Penal Code section 190.2 which precluded the possibility of parole even if mitigating factors exist is unconstitutional on its face.

9. A life sentence without possibility of parole where there is no finding of an intentional killing is cruel and unusual punishment.

■ In his first assignment of error, appellant points out the prosecution advanced two theories of first degree murder herein, one based on premeditation and another depending on the felony-murder rule. Respecting the latter, the defense requested an instruction specifying that: "If the purpose of a defendant was to kill someone inside the house, even if the intended victim was a different person from the actual victim, and arson was the means intended to accomplish the killing, then the felony-murder rule set forth above does not apply."

In proffering the instruction, what was sought to be accomplished was to place the matter on a footing consistent with the principles set forth in *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323], where in dealing with a homicide brought about solely as a result of an assault with a deadly weapon, it was held that: "[A] second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." (*Id.,* at p. 539 (italics in original); see also *People* v. *Wilson* (1969) 1 Cal.3d 431 [82 Cal.Rptr. 494, 462 P.2d 22].)

The scope of *Ireland* (and of *Wilson*), however, was specifically limited in the later case of *People* v. *Burton* (1971) 6 Cal.3d 375 [99 Cal.Rptr. 1, 491 P.2d 793], where it was concluded that: "[T]here is a very significant difference between deaths resulting from assaults with a deadly weapon, where the purpose of the conduct was the very assault which resulted in

death, and deaths resulting from conduct for an independent felonious purpose, such as robbery or rape, which happened to be accomplished by a deadly weapon and therefore technically includes assault with a deadly weapon. Our inquiry cannot stop with the fact that death resulted from the use of a deadly weapon and, therefore, technically included an assault with a deadly weapon, but must extend to an investigation of the purpose of the conduct. In both *Ireland* and *Wilson* the purpose of the conduct which eventually resulted in a homicide was assault with a deadly weapon, namely the infliction of bodily injury upon the person of another. The desired infliction of bodily injury was in each case not satisfied short of death. Thus, there was a single course of conduct with a single purpose.

"However, in the case of armed robbery, as well as the other felonies enumerated in section 189 of the Penal Code, there is an *independent felonious purpose.* . . . Once a person has embarked upon a course of conduct for one of the enumerated felonious purposes, he comes directly within a clear legislative warning—if a death results from his commission of that felony it will be first degree murder, regardless of the circumstances." (*Id.,* at pp. 387-388; fn. omitted.)

In the matter before us, the evidence was such as to support a conclusion appellant intended either to kill through the device of a deadly weapon, or that his purpose was restricted to causing destruction by means of arson. Accordingly, we are of the view the rationale expressed in *Burton* was controlling and that the trial court correctly refused to instruct the jury in the manner requested. Nor does the recent decision in *People* v. *Smith* (1984) 35 Cal.3d 798 [201 Cal.Rptr. 311, 678 P.2d 886] alter this conclusion, since it was there reiterated that: "In *People* v. *Burton, supra,* we refined the *Ireland* rule by adding the caveat that the felony-murder doctrine may nevertheless apply if the underlying offense was committed with an 'independent felonious purpose.' (6 Cal.3d at p. 387.) Even if the felony was included within the facts of the homicide and was integral thereto, a further inquiry is required to determine if the homicide resulted 'from conduct for an independent felonious purpose' as opposed to a 'single course of conduct with a single purpose' (*ibid.*)." (*Id.,* at pp. 805-806.)

■■ Appellant's second contention, that this court should abrogate the felony-murder rule essentially because it is anachronistic and because it creates an unconstitutionally conclusive presumption of malice, is answered we think, first by the observation it is not our function to declare obsolete a doctrine which, to date at least, finds continuing acceptance in the highest tribunal of this state (see, e.g., *People* v. *Burton, supra,* 6 Cal.3d 375), and second, by reference to the decision in *People* v. *Johnson* (1974) 38 Cal.App.3d 1 [112 Cal.Rptr. 834] (petn. for rehg. den.) where it was noted

that: "The felony-murder rule does not make the basic felony the source of a presumption (assumption, deduction or inference) of premeditation or malice. Rather, it dispenses with premeditation and malice as elements of first degree murder. It is . . . a special expression of state policy designed as a deterrent to the use of deadly force in the course of the enumerated felonies, embracing accidental or negligent as well as deliberate killings." (*Id.*, at p. 8.)

■ While set out separately, appellant's third, fourth and fifth contentions are sufficiently related that they may be addressed as a whole. Common to each of them is the assertion Penal Code section 190.2, subdivision (a)(17)(viii) is defective in its ultimate reference to the crime of "Arson in violation of (Penal Code) Section 447," since there is no section of the Penal Code so numbered. As a result, it is said, the referring statute is unconstitutionally vague. It is also urged appellant, not in fact having been charged with the nonexistent crime in the information cannot be subjected to a life without possibility of parole sentence,[1] and that, concomitantly, it is legally impossible to prove the elements of section 190.2, subdivision (a)(17) in terms of the crime of arson.

In rejecting these claims on the facts before us, we do not imply they would under all circumstances be unmeritorious. Here, however, as respondent points out, appellant was charged with wilfully and maliciously setting fire to and burning an inhabited structure in violation of Penal Code section 451, subdivision (b). The original arson statute, adopted in 1872 and which *was* Penal Code section 447, defined the crime as "the wilful and malicious burning of a building with intent to destroy it." Section 451, subdivision (b), accordingly, at least with respect to the language at issue here, constitutes a restatement of the prior statute, subject to the rule that: "When the provisions of one statute are carried into another statute under circumstances in which they are required to be construed as restatements and continuations and not as new enactments, any reference made by any statute, charter or ordinance to such provisions shall, unless a contrary intent appears, be deemed as reference to the restatements and continuations." (Gov. Code, § 9604.)

Such being the case, it cannot be said that as applied here section 190.2, subdivision (a)(17)(viii) was unconstitutionally vague, nor that appellant was otherwise prejudiced by its inaccurate statutory designation.

---

[1]Penal Code section 190.4, subdivision (a) requires that: "Whenever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be charged and proved pursuant to the general law applying to the trial and conviction of the crime."

The claim, of course, is that appellant was charged with violation of Penal Code section 451, subdivision (b) but not Penal Code section 447.

■ It is next urged there was prejudicial error in the failure to instruct the jury that for them to find the arson special circumstance true they must find that the murder was committed in order to carry out or to advance the crime of arson. In this regard the defense requested the following instruction: "To find that the special circumstance, referred to in these instructions as murder in the commission of [arson] is true, it must be proved:

"[1a. That the murder was committed while the defendant was [engaged in] [was an accomplice] in the [commission] [or] [attempted commission] of [an arson.]

"[1b. That the murder was committed during the immediate flight after the [commission] [attempted commission] of [an arson] [by the defendant] to which the defendant was an accomplice].] and,

"2. That the murder was committed in order to carry out or advance the commission of the crime of [arson] or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the [arson] was merely incidental to the commission of the murder."

The jury instead was simply instructed that: "To find that the special circumstance, referred to in these instructions as murder in the commission of arson, is true, it must be proved:

"That the murder was committed while the defendant was engaged in the commission of an arson."

Support for the proposition the requested instruction should have been given, it is claimed, derives from the opinion in *People* v. *Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468]. In that case, the defendant had transported his wife to a remote location where he shot her to death because she was "fooling around on him." Prior to the killing he had removed the victim's clothing under circumstances which were held adequate to support a conviction of robbery; after the murder he had removed other of his wife's possessions in an effort to conceal the true facts associated with the crime. The jury found the robbery to be a special circumstance justifying the death penalty. Our Supreme Court determined it was not, concluding that what had occurred "was not in fact a murder in the commission of a robbery but the exact opposite, a robbery in the commission of a murder." (*Id.*, at p. 60.) The court therefore further concluded that where the murder is in fact the primary felonious act and another crime, which otherwise could constitute a special circumstance, was merely incidental to the murder, a special circumstance finding cannot be sustained, since "To permit a jury

to choose who will live and who will die on the basis of whether in the course of committing a first degree murder the defendant happens to engage in ancillary conduct that technically constitutes robbery or one of the other listed felonies would be to revive 'the risk of wholly arbitrary and capricious action' (previously judicially) condemned. . . ." (*Ibid.,* at pp. 61-62.)

From the foregoing and from our previous discussion herein, however, it is clear that the rule announced in *Green* is without application here, as being inapposite to the facts of the present matter as established by the evidence, which was solely to the effect the killing of Mr. Glover occurred during the commission of the crime of arson, within the contemplation of Penal Code section 190.2, subdivision (a)(17)(viii). Appellant's proffered instruction on the question, therefore, was properly refused.

It is similarly contended that the statutory scheme underlying section 190.2, subdivision (a)(17) mandates that a special circumstance allegation may not be found true unless there is also a finding the murder to which it relates was intentional. ■ That the contention in its general import is well taken is established by the pronouncement in *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862] to the effect that a "felony murder special circumstance . . . requires proof that the defendant intended to kill." (*Id.,* at p. 153.) It is equally clear that, where no exception to application of the rule is present, a failure by the trial court to so instruct the jury or of the finder of fact to conclude the intention was established mandates reversal on the point. (See *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826].) One such exception, however, derived from the decisions in *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256] and *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], is such as to remove the result of the rule where there is lacking in the cause any evidence relating to the issue which is deserving of any consideration whatsoever, and it justifiably can be concluded the defendant either presented all evidence available on the question or failed to do so because none existed. (See *People* v. *Garcia, supra,* 36 Cal.3d 539, 555-556.) As noted by our Supreme Court: "In many cases it will be difficult to apply the *Cantrell-Thornton* analysis to *Carlos* error. If the defendant in a pre-*Carlos* trial was unaware that intent to kill was an element of the felony-murder special circumstance, he might through ignorance fail to present evidence worthy of consideration on that matter. We could not in such cases affirm a special circumstance finding on the ground that defendant did not introduce evidence sufficient to raise a material issue. But there may also be cases where the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes

the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration." (*Id.*, at p. 556.)

The latter portion of this observation, we believe, is applicable here.

Finally, appellant maintains that Penal Code section 190.2 is either unconstitutional on its face as imposing cruel and unusual punishment because it takes no account of mitigating factors in individual cases which might avoid a life without possibility of parole sentence or is similarly defective as applied to instances where no finding is made of an intentional murder.

The second of these points is adequately disposed of by the immediately preceding discussion. (See *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, 152.)

■ Concerning the first, we are satisfied appellant's assertion that mandatory imposition of confinement in state prison for life without possibility of parole is analogous to, i.e., equates with, a death penalty in terms of severity of punishment is neither required by reason nor supported by the authorities upon which appellant relies, which, in brief, express instead a contrary philosophy, namely that "death is a punishment different from all other sanctions in kind rather than degree" (*Woodson* v. *North Carolina* (1976) 428 U.S. 280, 303-304 [49 L.Ed.2d 944, 961, 96 S.Ct. 2978]), and that "the penalty of death is qualitatively different from a sentence of imprisonment, however long." (*Id.*, at p. 305 [49 L.Ed.2d at p. 961], see also *Roberts* v. *Lousiana* (1977) 431 U.S. 633 [52 L.Ed.2d 637, 97 S.Ct. 1993]; *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420 [134 Cal.Rptr. 650, 556 P.2d 1101]; cf. *Rogers* v. *Britton* (E.D.Ark. 1979) 476 F.Supp. 1036, 1039.)

The judgment is affirmed.

Compton, J., and Gates, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 29, 1985.