[No. A028704. First Dist., Div. Five. May 29, 1986.]

DONALD E. WEST et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Larry D. Langley for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Richard G. Tullis, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**LOW, P. J.**—In this appeal from a summary judgment, we hold that defendants State of California, the Department of Consumer Affairs and the Contractors' State License Board have no mandatory duty to either refuse to issue and/or revoke licenses issued to a home improvement contractor and one of its salesmen. These defendants are protected by discretionary licensing immunity and are not liable for plaintiffs' damages.

Plaintiffs are five couples who contracted to make home improvements with defendant below, Associated Remodeling Company, Inc. (ARC),[1] in 1980 and 1981. Plaintiffs allege that James Johnson, a home improvement salesman for ARC, fraudulently represented that plaintiffs first pay the full contract price which, defendant stated, would then be placed in a trust account to be used as needed. This was a violation of Business and Profes-

---

[1] Associated Remodeling Company, Inc., is not a party to this appeal.

sions Code section 7159, subdivision (d). Based on Johnson's misrepresentations, plaintiffs advanced most or all of the contract price to ARC prior to the start of construction. In all, plaintiffs paid ARC approximately $276,000. No or little work was performed on the individual contracts and no funds were repaid. Plaintiffs sued alleging fraud and conversion against ARC, its employees and the banks in which the putative trust funds were kept. Plaintiffs also sued the State of California, the Department of Consumer Affairs and the Contractors' State License Board (hereafter collectively referred to as the Board). In substance, plaintiffs alleged that the Board had a mandatory duty to investigate Johnson and ARC, that had it properly performed this duty it would not have licensed Johnson and ARC, and that plaintiffs would not have entered into the contracts in the absence of these licenses.

Defendant Board was granted a motion for summary judgment because no mandatory duties existed or were breached, and it had discretionary licensing immunity under Government Code section 818.4. We affirm the judgment.

## I

On January 24, 1977, the Board issued a general contractor's license to Associated Remodeling Contractors, the predecessor firm to defendant ARC. The company incorporated in November 1979; it reapplied and was granted a contractor's license in the name of the corporation. William Howard Goodrich was listed on the license application as president, secretary and treasurer, and Gerald Waller, a current general contractor's license holder, was listed as the responsible managing officer. Defendant Johnson was never listed as an officer, director or responsible managing employee of ARC nor was he used as a qualifying person.

Johnson registered as a home improvement salesman on June 27, 1975. (Bus. & Prof. Code, § 7152.)[2] As an employee of ARC, Johnson and others made the misrepresentations of which plaintiffs complain and executed the home improvement contracts on behalf of ARC. In 1971, Johnson's contractor's license was revoked by the Board because of fraudulent activities in connection with his now-defunct firm, Central Remodeling Company. He was subsequently convicted of 15 counts of grand theft arising out of these activities. It is central to plaintiffs' complaint that had the Board properly investigated Johnson's background, it would not have registered him, and, as a result, plaintiffs would not have entered into the home improvement contracts.

---

[2]Hereafter, all statutory references are to the Business and Professions Code unless otherwise indicated.

When Johnson's contractor's license was revoked in 1971, the Board had "flagged" this information which would have notified it if Johnson applied for his home improvement salesman registration. However, the Board concedes that this information was lost when Johnson later applied for the registration in 1975. Robert Berrigan, the licensing deputy for the Board, testified at his deposition that Johnson would not have been registered had the Board known of this fact when he applied. At a minimum, the Board would have required Johnson to post a $15,000 disciplinary bond pursuant to section 7071.8. Plaintiffs also argue that had the Board conducted a proper investigation it would not have issued a contractor's license to ARC in 1980, before plaintiffs entered into the home improvement contracts.

## II

■ Generally, no liability attaches to acts involving the exercise of governmental discretion (see *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 911-912 [136 Cal.Rptr. 251, 559 P.2d 606]). This immunity is codified in Government Code section 818.4, which provides: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

■ Section 7153.1 requires the home improvement salesman to submit to the registrar an application for registration. In particular, it provides: "The registrar *may* refuse to register the applicant under the grounds specified in Section 480." (Italics added.) ■ The term "shall" is mandatory and "may" is permissive. (§ 19; see *State of California* v. *Superior Court* (1984) 150 Cal.App.3d 848, 855 [197 Cal.Rptr. 914].) ■ The decision to license Johnson as a home improvement salesman was discretionary and the Board is therefore immune from liability pursuant to Government Code section 818.4. (See *Department of Motor Vehicles* v. *Superior Court* (1980) 105 Cal.App.3d 537, 540-541 [164 Cal.Rptr. 379]; *Papelian* v. *State of California* (1976) 65 Cal.App.3d 958, 961-962 [135 Cal.Rptr. 665]; cf. *Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 912.)

## A

■ Plaintiffs argue that mandatory duties are contained under several sections of the Business and Professions Code.[3] None of these sections

---

[3]Plaintiffs rely on the following sections: Section 7065 (requires that the registrar must

would have compelled the Board to refuse to register Johnson as a home improvement salesman. These statutes concern the administration and issuance of a *contractor's* license; Johnson did not apply for and was not issued a contractor's license. Nor does the Board have a mandatory duty to keep a record of the revocation of Johnson's contractor's license in 1971. Even though the Board was careless in losing this information, there was no mandatory duty to refuse to register Johnson as a salesman based on his background. The Board acted slovenly in registering Johnson and we do not condone this shoddy practice. However, Government Code section 818.4 exempts the Board from liability for such registration. (See *Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 915; *Department of Motor Vehicles* v. *Superior Court, supra,* 105 Cal.App.3d at pp. 540-541.)

B

■ The Board did not breach any mandatory duty when it issued a general contractor's license to ARC. Sections 7069, 7070, 7071 provide that a license shall not issue if an officer, director, partner, associate or responsible managing employee of the licensee has committed acts which are grounds for denial of licensure. Johnson acted only as an employee of ARC. He was never designated on the license application as an officer or director of the corporation and was never listed as the responsible managing employee. In short, Johnson never acted as the qualifying employee for ARC; Johnson's position in the company was not an issue of fact. That he may have represented himself as an officer of ARC to other persons cannot be a basis for imposing liability on the Board, for it properly relied on the information supplied on the licensing application.

■ Relying on former California Administrative Code, title 16, section 706,[4] plaintiffs argue that the Board had a duty to solicit information about

---

qualify applicants for a contractor's license by written examination); section 7068.2 (requires a license holder to replace a qualifying employee within 90 days of disassociation of that employee from employment); section 7069 (provides that an applicant may be denied a license if its relevant personnel have been convicted of crimes or engaged in acts involving dishonesty, fraud, etc.); section 7080 (requires the registrar to keep records of all applications, licenses issued and revoked (repealed Stats. 1983, ch. 891, § 19, p. 3234)); section 7071 (provides that no license shall be issued if a member of the organization does not meet the qualifications required of an applicant other than knowledge and experience); section 7071.8 (requires a disciplinary bond for restoration of a suspended or revoked contractor's license); section 7071.11 (sets out the procedures for actions against a contractor's bond); section 7077 (characterizes every original license as a probationary license until renewed, and allows the registrar discretion to revoke the license upon receiving complaints which constitute grounds for revocation or suspension); and section 7121 (prevents a person whose license has been revoked from serving as an officer, director, associate, partner or qualifying individual of a licensee).

[4]California Administrative Code, title 16, section 700 et seq. was renumbered and amended in 1984 and can now be found in title 16, section 800 et seq.

Johnson from applicant ARC. That section required the Board to design its application to require the corporate applicant to provide "(c) . . . the names and addresses of the president, vice president, secretary, and responsible managing officer or officers; the name and address of the responsible managing employee or any other person qualifying by examination for the applicant. For the purpose of this article, any persons in any of the capacities set forth in this rule shall be deemed to be members of the personnel of applicant. . . . [¶] (e) Whether applicant or applicant's personnel or anyone with whom applicant or applicant's personnel has been associated in the contracting vocation has ever been licensed or had a professional or vocational license refused or revoked. . . ."

Johnson was never designated an officer or responsible managing employee of ARC. The information provided by ARC corresponded with its "Articles of Incorporation" filed with the Secretary of State. The application form provided to ARC asked for all the information required by California Administrative Code, title 16, section 706. If, as plaintiffs suggest, ARC intentionally failed to disclose Johnson's role as an officer of the company, the Board cannot be held liable. The Board cannot prevent applicants from filing false or misleading licensing applications and it is not a guarantor of the truthfulness of the information contained in the application. Its duty is to request full and complete disclosure. It performed this duty and no liability can be imposed because of ARC's alleged falsehoods.

■ Plaintiffs assert that Johnson should have been identified as an "associate" within the meaning of sections 7069, 7121, and California Administrative Code, title 16, section 706. ■ The interpretation of a statute is not a question of fact, but a question of law. (*In re M.L.B.* (1980) 110 Cal.App.3d 501, 503 [168 Cal.Rptr. 57].) ■ The term "associate" is not the equivalent of employee. The term must be read together with the more specific classes of persons who are required to be designated on the license application. (See generally, *Sears, Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 330-331 [158 Cal.Rptr. 370, 599 P.2d 676].) When interpreted in this manner "associate" means an executive of the firm, one who is in a policymaking position and not simply a salesman. If the Legislature meant to include *any* person employed by the corporate applicant, it would have been an easy matter to use broader language.

California Administrative Code, title 16, former section 708 does not require that the application be signed by all persons who are required to be listed on the application form. Johnson is not required to supply background information and to sign the application. The fact that ARC did not disclose Johnson's identity in its application was not due to any act or omission by

the Board. The issuance of the general contractor's license to ARC was not due to any deficiency in the form or content of the application.

■ Furthermore, the Board need not condition the issuance of the license to ARC on posting a disciplinary bond in the minimum amount of $15,000. (§ 7071.8.) A bond is required only when an officer, director or qualifying member of the corporation had a contractor's license suspended or revoked. (§ 7071.8, subd. (a)(3).) Johnson was never designated as serving in any of these capacities; the Board would have had no reason to require such a bond.

### III

■ The Board has a duty to conduct a comprehensive investigation of at least 3 percent of all licensing applications for the years 1979 through 1981. (Former Cal. Admin. Code, tit. 16, § 723.1.) Plaintiffs argue that such an investigation might have included ARC's 1980 license application and resulted in the discovery that Johnson was acting as an officer of ARC. We cannot presume that ARC's application would have been in the pool of applications reviewed. ARC filed its application for a contractor's license on November 5, 1979, and the Board issued the license on March 14, 1980. The investigation program commenced on February 6, 1980, during the time when ARC's application was already being processed. ARC's application was a "waiver application," and the qualifying employee, Gerald Waller, had previously been examined and currently held a contractor's license in good standing. In these cases, the Board has discretion to waive an examination for a contractor's license and approve the application. (§ 7065.1.) Further, Alex Bablot, the person responsible for implementing the program at the Board, interpreted the regulations to require investigation only of original "examination applications," for which a test was required. As such, ARC's "waiver application" would have been excluded from any investigation. ■ The contemporaneous construction of a statute by the agency responsible for its implementation and interpretation is entitled to great weight unless clearly erroneous. (*Davenport* v. *Vido Artukovich & Son, Inc.* (1983) 141 Cal.App.3d 60, 66 [190 Cal.Rptr. 64].) ■ The causal link between the Board's duty to investigate and the discovery of the damaging information is speculative.

Even assuming ARC should have been included in the 3 percent random sample, the investigation was not designed to, and would not necessarily, uncover the deception alleged by plaintiffs. The purpose of the investigation was to confirm the veracity of the statements attesting to the knowledge and experience of the members of the corporate applicant. (See § 7068.) The experience and knowledge of the persons listed on ARC's application

were not in dispute. The Board would not have been under any obligation to deny the license to ARC, and plaintiffs have failed to establish that the breach of the duty to investigate was the proximate cause of their loss. (See *State of California* v. *Superior Court, supra,* 150 Cal.App.3d at pp. 856-859.)

## IV

■ Plaintiffs argue that the Board had a duty to investigate complaints filed against ARC to warn them about Johnson's previous criminal history and the illegal practices of ARC, and that the breach of these duties proximately caused their losses. Leo Plunkett, the Board's officer in San Jose, received one consumer complaint in 1978, seven complaints in 1979, sixteen complaints in 1980, and four complaints by February 1981 when the Board initiated its disciplinary investigation of ARC. In 1979 and 1980, Plunkett met with ARC's president, Goodrich, to resolve the complaints received up to that time. Most of these early complaints involved delays and claims of poor workmanship. Goodrich resolved these problems to the customers' satisfaction and Plunkett did not proceed with disciplinary proceedings. However, in early 1981, Plunkett's investigation uncovered more serious delays and deceitful practices, notably the misrepresentation about the trust accounts and the prepayment of the contract price. It was at that time that Plunkett began preparations for disciplinary and criminal action against ARC and some of its employees.

■ Plaintiffs claim, relying on section 7077 which treats all original licenses as probationary, that upon first receiving these complaints, the Board had a duty to revoke ARC's contractor's license. If during the probationary period the registrar receives complaints on grounds which, "in the registrar's discretion, it would be proper to revoke the probationary license, the registrar shall forthwith notify the applicant to show cause within not more than 30 days, why the probationary license should not be revoked." (§ 7077.) Nothing in this statute creates a mandatory duty to hold a probationary hearing upon the receipt of one or more complaints, but that decision is within the discretion of the registrar. It was Board policy to first attempt to get the contractor to resolve the problems, and, if unsuccessful, to begin disciplinary proceedings. This was not unreasonable and such a course of action is best left to the sound discretion of the Board's investigators. The discretionary power of the registrar is confirmed in section 7090, which provides in part: "The registrar may upon his own motion and shall upon the verified complaint in writing of any person, investigate the actions of any contractor or home improvement salesman within the state and may temporarily suspend or permanently revoke any license or registration if the holder, while a licensee . . . , is guilty of or commits any one or more of the acts or omissions constituting causes for disciplinary action." The

Board had a mandatory duty to investigate the consumer complaints against ARC. It did this; the Board was not under a mandatory duty to revoke ARC's license before attempting to get ARC to correct the problems. (See *State of California* v. *Superior Court, supra,* 150 Cal.App.3d at p. 860.)

 The Board's duty to investigate complaints against ARC does not create a concomitant duty to warn prospective customers. "As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if '(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection.' [Citations.]" (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 203 [185 Cal.Rptr. 252, 649 P.2d 894].)

 It was the Board's duty to investigate complaints against ARC and to commence disciplinary proceedings if, in its discretion, the Board believed this was warranted. There exists no express or implied statutory duty to share the results of the investigation with the general public. Its licensing authority does not allow it to supervise the daily activities of its licensees or to guarantee the quality of the applicant's work. There was no duty to warn.

The judgment is affirmed.

King, J., and Haning, J., concurred.