TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------

OPINION          :
                 :
    of           :
                 :
JOHN K. VAN DE KAMP    :        No. 88-501
    Attorney General   :
                 :        <u>DECEMBER 7, 1988</u>
RODNEY O. LILYQUIST    :
Deputy Attorney General    :


------------------------------------------------------------------

THE HONORABLE MICHAEL H. KRAUSNICK, COUNTY COUNSEL, STANISLAUS COUNTY, has requested an opinion on the following questions with respect to a city annexation proceeding:

1. Are the city and the county required to reach an agreement for the transfer of property tax revenues?

2. Is a property tax transfer agreement void if it is reached by the city and the county after expiration of the 30-day negotiation period?

3. Is a certificate of filing void that is issued with respect to a petition presented more than 60 days after the last signature was affixed?

CONCLUSIONS

1. In a city annexation proceeding, the city and the county are not required to reach an agreement for the transfer of property tax revenues.

2. In a city annexation proceeding, a property tax transfer agreement is void if reached by the city and the county after expiration of the 30-day negotiation period.

3. In a city annexation proceeding, a certificate of filing is void that is issued with respect to a petition presented more than 60 days after the last signature was affixed.

ANALYSIS

The Legislature has recently enacted a comprehensive statutory scheme known as the Cortese-Knox Local Government Reorganization Act of 1985 (Gov. Code, §§ 56000-57550; "Act"),[1] which consolidates and simplifies the procedures to be followed by cities, counties, and special districts in changing their boundaries.

The three questions presented for resolution concern a proposed annexation of territory by a city. Such proceedings may be initiated by the filing of a petition signed by the requisite number of persons in the area or by the filing of a resolution of the city council proposing the annexation. The petition or resolution is part of an application submitted to the local agency formation commission ("LAFCO") established in the county. (§§ 56650-56653, 56700, 56800, 56828.) When the application is filed with LAFCO it is referred to the county assessor and auditor who provide estimates of the property tax changes the annexation would cause. The city and county have 30 days from receipt of these estimates to negotiate the actual change in property taxes which will result from the annexation. Once these changes are negotiated LAFCO holds a public hearing and either approves or disapproves the proposal. (§§ 56828, 56840, 56851.)

If LAFCO approves the proposal, the city council commences its proceedings, holds a public hearing, and either approves or disapproves the proposal. (§§ 57000, 57002, 57050, 57075, 57080.) If the city council gives its approval, the voters of the area are given an opportunity, with certain exceptions, to vote on the proposal. (§§ 56112, 56375, 57100.) If the voters approve, LAFCO files a certificate of completion, establishing the effective date of the annexation. (§§ 57200-57203.)

1. Negotiating a Property Tax Transfer

Property tax revenues received by cities, counties, and special districts are subject to and controlled by an allocation formula devised by the Legislature. (See Rev. & Tax. Code, §§ 93-100; Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 218; American Canyon Fire Protection Dist. v. County of Napa (1983) 141 Cal.App.3d 100, 105-106; 70 Ops.Cal.Atty.Gen. 87, 88 (1987).) When a city annexes unincorporated territory, a portion of the property taxes generated by the area is shifted under the statutory formula to reflect the change in jurisdiction from the county to the city. Since the county will continue to provide various services to the newly incorporated area, it will continue to receive some of the property taxes collected from the area. How much of the revenue is to be transferred is subject to negotiation and agreement between the city and the county. Revenue and Taxation Code section 99, subdivision (b) states in part:

"Upon the filing of an application or resolution pursuant to . . . the [Cortese-Knox Local Government] District Reorganization Act of 1965 . . . , but prior to the

---

[1]All references hereafter to the Government Code are by section number only.

issuance of a certificate of filing, the executive officer shall give notice of such filing to the assessor and auditor of each county within which the territory subject to the jurisdictional change is located. Such notice shall specify each local agency whose service area or responsibility will be altered by the jurisdictional change.

"(1) (A) The county assessor shall provide to the county auditor, within 30 days of the notice of filing, a report which identifies the assessed valuations for the territory subject to the jurisdictional change and the tax rate area or areas in which the territory exists.

"(B) The auditor shall estimate the amount of property tax revenue generated within the territory which is the subject of the jurisdictional change during the current fiscal year.

"(2) The auditor shall estimate what proportion of the property tax revenue determined pursuant to paragraph (1) is attributable to each local agency pursuant to Section 96 or 97, and Section 98, notwithstanding the provisions of Section 98.6.

"(3) Within 45 days of notice of the filing of an application or resolution, the auditor shall notify the governing body of each local agency whose service area or service responsibility will be altered by the amount of, and allocation factors with respect to, property tax revenue estimated pursuant to paragraph (2) which is subject to a negotiated exchange.

"(4) Upon receipt of the estimates pursuant to paragraph (3) the local agencies shall commence negotiations to determine the amount of property tax revenues to be exchanged between and among such local agencies. Such negotiation period shall not exceed 30 days.

"Such exchange may be limited to an exchange of property tax revenues from the annual tax increment generated in the area subject to the jurisdictional change and attributable to the local agencies whose service area or service responsibilities will be altered by the proposed jurisdictional change. The final exchange resolution shall specify how the annual tax increment shall be allocated in future years.

"(5) In the event that a jurisdictional change would affect the service area or service responsibility of one or more special districts, the board of supervisors of the county or counties in which the districts are located shall, on behalf of the district or districts, negotiate any exchange of property tax revenues.

"(6) Notwithstanding any other provision of law, the executive officer shall not issue a certificate of filing pursuant to Sections 35152, 54791, or 56198 of the Government Code until such local agencies included in the property tax revenue exchange negotiation, within the 30-day negotiation period, present resolutions

adopted by each such county and city whereby each such county and city agrees to accept the exchange of property tax revenues.

"(7) In the event that the commission modifies the proposal or its resolution of determination, any local agency whose service area or service responsibility would be altered by the proposed jurisdictional change may request, and the executive officer shall grant, 15 days for the affected agencies, pursuant to paragraph (4) to renegotiate an exchange of property tax revenues. Notwithstanding the time period specified in paragraph (4), if the resolutions required pursuant to paragraph (6) are not presented to the executive officer within the 15-day period, all proceedings of the jurisdictional change shall automatically be terminated." (Emphases added.)[2]

The first question focuses on the obligation of a city and a county to negotiate a property tax transfer agreement in a city annexation proceeding. Are they required to reach an agreement? We conclude that they are not so required.

Revenue and Taxation Code section 99, subdivision (b)(4) states that the city and county "shall commence negotiations to determine the amount of property tax revenues to be exchanged . . . ." Use of the term "shall" indicates that the two local governments have a mandatory duty to negotiate. (See Rev. & Tax. Code, § 16; West v. State of California (1986) 181 Cal.App.3d 753, 760; State of California v. Superior Court (1984) 150 Cal.App.3d 848, 855; Camp v. Board of Supervisors (1981) 123 Cal.App.3d 334, 348.)

The Legislature did not, however, use the phrase: "shall reach an agreement concerning the amount of property tax revenues to be exchanged . . . ." Rather, it used the term "negotiations." The duty to negotiate does not include the duty to agree. (See Carl Joseph Maggio, Inc. v. Agricultural Labor Relations Bd. (1984) 154 Cal.App.3d 40, 58-59; Placentia Fire Fighters v. City of Placentia (1976) 57 Cal.App.3d 9, 25-26; Los Angeles County Employees Assn. v. County of Los Angeles (1973) 33 Cal.App.3d 1, 7; N.L.R.B. v. Tomco Communications, Inc. (9th Cir. 1978) 567 F.2d 871, 881; N.L.R.B. v. Herman Sausage Co. (5th Cir. 1960) 275 F.2d 229, 231-232.)

---

[2]While Revenue and Taxation Code section 99 refers to "Sections 35152, 54791, or 56198 of the Government Code," we note that the referenced statutes have been repealed and incorporated into the Act as section 56828. We substitute section 56828 for the referenced statutes under the applicable rule of statutory construction. (See § 9604; People v. Richerson (1985) 169 Cal.App.3d 1006, 1008-1009; People v. Oliver (1985) 168 Cal.App.3d 920, 926.)

The reference to "certificate of filing" in the statute concerns a document issued by LAFCO with respect to the initial application proposing the jurisdictional change. No hearing is held by LAFCO until the certificate is issued. (§ 56828.)

Indeed, when the Legislature amended Revenue and Taxation Code section 99 in 1980, it rejected a proposal to force an agreement upon cities and counties. The report of the Assembly Revenue and Taxation Committee (April 14, 1980) stated in part:

"One of the problems with the transfer of property tax revenue due to jurisdictional [change] through negotiations is that, in many cases, there have been protracted struggles among the participants and no agreements. Therefore, many worthwhile jurisdictional changes are being held up. This bill does not address this impasse issue."

"Perhaps the committee may wish to consider some type of arbitration where the last best offer of each party is submitted to a neutral, unbiased third party, who must choose one or the other of the offers."

While the Legislature ultimately amended the statute to include a "neutral, unbiased third party" arbitration procedure, it did so only for school districts negotiating property tax transfers (see Stats. 1980, ch. 801, § 11) and not for transfers between cities and counties. The difference in the language of the statutory provisions with respect to similar situations demonstrates different legislative purposes. (See Committee of Seven Thousand v. Superior Court (1988) 45 Cal.3d 491, 507; Safer v. Superior Court (1975) 15 Cal.3d 230, 237-238; City of Hueneme v. City of Oxnard (1959) 52 Cal.2d 285, 295; Santa Fe Transp. v. State Board of Equal. (1959) 51 Cal.2d 531, 538-539.)

In answer to the first question, therefore, we conclude that a city and a county are not required to reach a property tax transfer agreement in a city annexation proceeding.

2. 30-day Negotiation Period

The city and county are given 30 days in which to negotiate a property tax transfer agreement. The second question posed is whether this statutory time limitation has the effect of prohibiting a city and a county from reaching an agreement after the 30-day period has expired. We conclude that if agreement is not reached within the thirty day negotiation period the annexation fails and that an agreement reached after the 30-day period would be void.

Revenue and Taxation Code section 99, subdivision (b)(4) provides in part: "Such negotiation period shall not exceed 30 days." Subdivision (b)(6) of the same statute additionally provides: ". . . the executive officer shall not issue a certificate of filing . . . until such local agencies . . . within the 30-day negotiation period . . . agree[] to accept the exchange of property tax revenues."

When the language in question was added to the statute in 1980 (Stats. 1980, ch. 801, § 11), the purpose of the amendment was stated in the report of the Assembly Revenue and Taxation Committee (April 14, 1980) as follows:

"Under present law, negotiations can drag on indefinitely. There is some feeling that such negotiations should be done timely, so all parties can know where they stand."

Use of the term "shall" again demonstrates a mandatory duty on the part of the city, county, and LAFCO to follow the statutory limitation. (See Rev. & Tax Code, § 16; West v. State of California, supra, 181 Cal.App.3d 753, 760; State of California v. Superior Court, supra, 150 Cal.App.3d 848, 855; Camp v. Board of Supervisors, supra, 123 Cal.App.3d 334, 348.) It is a mandatory duty rather than a permissive or discretionary one.

It does not necessarily follow, however, that the expiration of the 30-day period removes the power and jurisdiction of a city and a county to further negotiate and reach an agreement. Whether an agreement reached subsequent to the 30th day is valid and lawful or illegal and void depends upon the intent of the Legislature in fixing the particular time limitation.

For example, a failure to comply with a mandatory duty did not bar further action in Edwards v. Steele (1979) 25 Cal.3d 406, 409-413 [administrative decision valid although hearing held and decision rendered after deadlines specified in city charter], City and County of San Francisco v. Cooper (1975) 13 Cal.3d 898, 931 [wage resolution valid though enacted prior to the date designated in city charter], Garrison v. Rourke (1948) 32 Cal.2d 430, 434-436 [judicial decision valid though rendered after statutorily prescribed period], Cake v. City of Los Angeles (1913) 164 Cal. 705, 709-710 [tax assessment valid although not adopted within time limit prescribed by statute], People v. Curtis (1986) 177 Cal.App.3d 982, 987-989 [judicial order valid although hearing held after statutory deadline] and Castorena v. City of Los Angeles (1973) 34 Cal.App.3d 901, 908 [reapportionment ordinance valid though enacted subsequent to charter designated deadline].

As indicated by the above cases, the expiration of various statutory time limitations has not been found to invalidate subsequent governmental action. In Edwards v. Steele, supra, 25 Cal.3d 406, 410, the Supreme Court declared:

"We have held that, generally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed. (See, e.g., Garrison v. Rourke (1948) 32 Cal.2d 258, 262, Francis v. Superior Court (1935) 3 Cal.2d 19, 27; see also Radovich v. Agricultural Labor Relations Bd. (1977) 72 Cal.App.3d 36, 47; Anderson v. Pittenger (1961) 197 Cal.App.2d 188, 194; cf. City and County of San Francisco v. Cooper (1975) 13 Cal.3d 898, 931.) In ascertaining probable intent, California courts have expressed a variety of tests. In some cases focus has been directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. (Morris, supra, at pp. 909-910; Pulcifer, supra, at p. 262; Francis, supra, at pp. 28-29.) Other cases have suggested that a time limitation is deemed merely directory 'unless a consequence or penalty is provided for failure to do the act within the time commanded.' (Garrison, supra, at pp. 435-436; see McDonald's Systems of

California, Inc. v. Board of Permit Appeals (1975) 44 Cal.App.3d 525, 544-545, fn. 15, and cases cited.)"

Edwards was followed in People v. Curtis, supra, 177 Cal.App.3d 982, 988, where the court focused "on the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment." The Curtis court also relied on language in French v. Edwards (1872) 80 U.S. (13 Wall.) 506, 511 [20 L.Ed. 702, 703], quoted with approval in People v. McGee (1977) 19 Cal.3d 948, 961. In French v. Edwards, Justice Fields stated:

"There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard to which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated." (80 U.S. at p. 511.)

On the other hand, in Palmer v. City of Ojai (1986) 178 Cal.App.3d 280, the court concluded that the particular time limitation at issue was intended by the Legislature to be jurisdictional and to void all further proceedings. The court stated:

"We are aware that our Supreme Court has stated, in Edwards v. Steele (1979) 25 Cal.3d 406, 410, that time limitations in and of themselves are normally viewed as 'directory' rather than 'mandatory.' (See also 2A Sutherland, Statutory Construction, supra, Mandatory and Directory Construction, § 57.19, p. 682.) Two factors may, however, persuade to the contrary: (1) Where 'time is of the essence' in the legislation and (2) where the penalty for noncompliance, i.e., the consequences, has been specified in the legislation itself. The legislative materials all support the view that the intent of the Legislature was to place reasonable but firm time limitations on the deliberations of public agencies concerning land use decisions. The penalty was specified." (Id., at p. 293, fn. omitted.)

We believe that the 30-day statutory period set by the Legislature for negotiating a property tax transfer agreement was intended to limit the power of a city, a county, and LAFCO to further act in the proceedings. The legislative history discloses that its purpose was to prevent the negotiations from "drag[ging] on indefinitely . . . so all parties can know where they stand." A contrary conclusion would thwart this singular purpose of the Legislature.

Moreover, we find the same legislative intent of providing certainty for public agencies in both subdivisions (b)(4) and (b)(7) of the statute, with the latter unmistakably specifying that "all proceedings of the jurisdictional change shall automatically be terminated" at the end of the

limitations period. No meaningful distinction may be drawn between the two provisions with respect to the consequences of a failure to reach an agreement in a timely manner. "A statute must be construed 'in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts.'" (People v. Woodhead (1987) 43 Cal.3d 1002, 1009.)

As in Palmer v. City of Ojai, supra, 178 Cal.App.3d 280, 293, we find that "[t]he legislative materials all support the view that the intent of the Legislature was to place reasonable but firm time limitations" upon the negotiations for the exchange of property tax revenues in a city annexation proceeding.

Under the statutory directive of Revenue and Taxation Code section 99, subdivision (b)(4), a city and a county have an obligation to terminate their negotiations by the end of the 30-day period. If they continue to negotiate and reach an agreement, noncompliance with the time limitation will invalidate the agreement subsequently reached. The power and jurisdiction of the city, county, and LAFCO are removed by the limitation; the agreement and the certificate of filing issued by LAFCO would be unlawful. By so construing the statutory provision, we effectuate the Legislature's intent to prevent the negotiations from "dragging on indefinitely" so that "all parties can know where they stand."

In answer to the second question, therefore, we conclude that a property tax transfer agreement is void if reached by a city and a county after expiration of the 30-day negotiation period in a city annexation proceeding.

### 3. 60-Day Petition Period

One of the requirements for submitting a petition to LAFCO proposing the annexation of territory by a city is that it be presented "within 60 days after the last signature is affixed." Subdivision (a) of section 56705 states:

> "Except as otherwise provided in subdivision (b), no petition shall be accepted for filing unless the signatures on the petition are secured within six months of the date on which the first signature on the petition was affixed and the petition is submitted to the executive officer for filing within 60 days after the last signature is affixed. If the elapsed time between the date on which the last signature is affixed and the date on which the petition is submitted for filing is more than 60 days, the executive officer shall file the petition in accordance with Section 56709."[3]

---

[3]Subdivision (b) of section 56705 applies to certain large cities; it contains the same language as set forth in subdivision (a) with respect to petitions submitted for filing more than 60 days from the date of the last signature.

Sections 56750-56762 govern the signature requirements for petitions, with section 56753 specifically governing a proposed annexation of territory to a city.

Section 56709 in turn provides:

"If the petition, including any supplemental petition, is certified to be insufficient, it shall be filed with the executive officer as a public record, without prejudice to the filing of a new petition. The executive officer shall give mailed notice to the chief petitioners, if any, stating that the petition has been found to be insufficient."

The third question posed is whether a certificate of filing would be void that is issued with respect to a petition presented more than 60 days after the last signature was affixed. We conclude that it would be void.

Sections 56705 and 56709 prescribe a mandatory duty, not a permissive or discretionary one, for the petitioners to submit their petition to LAFCO within the 60-day period. (See §§ 5, 14; West v. State of California, supra, 181 Cal.App.3d 753, 760; State of California v. Superior Court, supra, 123 Cal.App.3d 334, 348.) While the various references to "filing" in the two statutes may appear to be confusing, reading sections 56705 and 56709 together and in the context of the Act as a whole discloses that if a petition is submitted after the 60-day period, LAFCO has a mandatory duty to (1) certify the petition as insufficient, (2) mail notice to the petitioners that the petition has been found to be insufficient, (3) treat the petition as not initiating the proceedings, and (4) retain the petition as a public record available for public inspection but having no other significance. In so interpreting sections 56705 and 56709, we apply the rule that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (Moore v. Panish (1982) 32 Cal.3d 535, 541; see People v. Woodhead, supra, 43 Cal.3d 1002, 1009; People v. Craft (1986) 41 Cal.3d 554, 560.)

Nevertheless, as previously discussed, noncompliance with a statutory time limitation does not necessarily invalidate all subsequent governmental actions. Similar to the duty at issue in the second question, we find here that noncompliance with the 60-day statutory limitation removes the power and jurisdiction of LAFCO to initiate the proceedings.

Of persuasive significance is the language in Palmer v. City of Ojai, supra, 178 Cal.App.3d 280, 293, that the Legislature intended a time limitation to be jurisdictional "where the penalty for noncompliance, i.e., the consequences, has been specified in the legislation itself." As in Palmer, section 56705 specifies a "consequence" for the failure to submit a petition within 60 days of the last signature. The petition is to be certified as insufficient for purposes of initiating the proceedings but kept as a public record. No prejudice, however, is to attach to the filing of a new petition as a result of the prior insufficiency.

We believe that these express consequences contained in sections 56705 and 56709 demonstrate a mandatory legislative intent with respect to the effect of the time limitation upon subsequent governmental actions. By reference to the filing of a new petition, the Legislature has indicated the jurisdictional nature of a failure to meet the statutory deadline. (See Edwards v. Steele, supra, 25 Cal.3d 406, 410.)

Treating the time limitation as jurisdictional promotes the legislative purpose of protecting the public from "stale" petitions and requires the initiation of proceedings based solely upon the signatures of those currently residing in the area. (See Morris v. County of Marin (1977) 18 Cal.3d 901, 909-910.) Because a new petition may be filed without any prejudice attaching, the rights of interested parties are appropriately safeguarded. (See People v. McGee, supra, 19 Cal.3d 948, 962-963.)

Finally, we examine the language of section 56106, which states:

"Any provisions in this division governing the time within which an official, a conducting authority, or the commission is to act shall in all instances, except for notice requirements, be deemed directory, rather than mandatory."

This statutory directive is inapplicable with respect to the time limitation of section 56705 since the latter limits petitioners (persons attempting to initiate the proceedings) rather than "an official, a conducting authority, or the commission." (See §§ 56022, 56068, 56079, 56700.)[4] Such construction of section 56106 harmonizes its language with the provisions of sections 56705 and 56709 that clearly demonstrate the jurisdictional effect of the 60-day time limitation specified therein. Statutory provisions are to be harmonized whenever possible. (People v. Woodhead, supra, 43 Cal.3d 1002, 1009; People v. Craft, supra, 41 Cal.3d 554, 560; Moore v. Panish, supra, 32 Cal.3d 535, 541.)

Accordingly LAFCO is without power and jurisdiction to accept a petition submitted to it more than 60 days after the last signature has been affixed. If LAFCO were to issue a certificate of filing and treat the petition as sufficient for purposes of initiating the proceedings even though received after the expiration of the 60-day period, the certificate would be unlawful and without effect.

In answer to the third question, therefore, we conclude that a certificate of filing is void that is issued with respect to a petition presented more than 60 days after the last signature was affixed.

* * * * *

---

[4]It may also be observed that courts have not always followed legislative declarations concerning the effect of a particular time limitation. (See, e.g., Liberty Mut. Ins. Co. v. Ind. Acc. Com. (1964) 231 Cal.App.2d 501, 509-510.)