[No. A126217. First Dist., Div. Three. July 28, 2010.]

RICK L. SCHWARTZ, Plaintiff and Appellant, v.
STEVE POIZNER, as Insurance Commissioner, etc., Defendant and
Respondent.

## COUNSEL

Schneider Wallace Cottrell Brayton Konecky, Todd M. Schneider, Mark T. Johnson, W. H. "Hank" Willson IV; Berger & Montague and Steven L. Bloch for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Joyce E. Hee and Anne Michelle Burr, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**POLLAK, J.**—In October 2005, following an extensive investigation, the Commissioner of California's Department of Insurance (the Commissioner) entered into a settlement agreement with a number of related insurance companies (the insurers) resolving allegations that the insurers' claims-handling procedures violated the Insurance Code.[1] In the present action,

---

[1] All statutory references are to the Insurance Code unless otherwise noted.

plaintiff Rick L. Schwartz alleges numerous causes of action against the insurers who are parties to the settlement agreement, and also petitions for a writ of mandate directed at the Commissioner. Plaintiff purports to represent classes of California residents holding disability income policies issued by the insurers who, like him, submitted no claims under their policies but allegedly were overcharged for their policies in view of the insurers' unlawfully restrictive claims procedures and who received no benefit under the terms of the settlement agreement. Plaintiff appeals from an order dismissing the petition for a writ of mandate, which sought to compel the Commissioner to pursue additional remedies against the insurers that will inure to the benefit of class members.[2] He contends the trial court erred in concluding that the Commissioner does not have a ministerial duty to seek the additional relief and abused its discretion in failing to seek that relief. We disagree and shall affirm the order dismissing the action against the Commissioner.

## Factual and Procedural History

The settlement agreement between the Commissioner and insurers established a claims reassessment process under which previously denied claims for disability income benefits could be resubmitted for reevaluation. The agreement also imposed an $8 million penalty and required changes to the insurers' claims-handling procedures and to the language of their insurance policies. As a result of the reassessment process, approximately $230.2 million in additional benefits will be paid to policyholders that made claims. The settlement agreement does not include any express benefits for policyholders who, like plaintiff, had not submitted a claim for benefits under the relevant policies.

Plaintiff's second amended complaint alleges that the insurers' "systematic scheme to deny and terminate claims eliminated coverage under the disability income policies for all policyholders and, therefore, effectuated a reduction in coverage across the entire policy holder class. As a result, plaintiff and the classes paid premium dollars for units of coverage that were never afforded under the disability income policies, and [the insurers] breached the policies by not providing the units of coverage that plaintiff and the classes purchased with their premium payments. . . . [G]iven that the disability income policies were non-cancelable and guaranteed renewable, [the insurers were] prohibited from raising premiums for any reason. Reducing coverage functioned as a *de facto* increase in premiums because coverage was eliminated but premiums remained the same. By increasing the premiums, [the insurers] breached the contracts of insurance with its policyholders and collected excessive premiums during the conspiracy period." The amended complaint also alleges that

---

[2] The defendant insurers are not parties to this appeal.

the "Commissioner's failure to incorporate any relief into the [settlement agreement] to redress the substantial premium overcharges paid by plaintiff and the classes was arbitrary and capricious and an abuse of discretion" and that the "Commissioner's failure to revoke, rescind and/or withdraw approval of the subject policies constituted a failure to follow legal mandates under the California Insurance Code and, likewise, was arbitrary and capricious and an abuse of discretion." In addition to remedies sought against the insurers, the amended complaint seeks a writ of mandate to compel the Commissioner "to perform the duties imposed upon him by law . . . and to reopen the investigation of [the insurers] or otherwise take appropriate action under Insurance Code sections 10291.5, 12921 and 12926 et seq. in order to accord relief to plaintiffs and the classes for the economic injury that has gone completely unredressed by the [settlement agreement]."

In April 2009, the Commissioner moved to dismiss the mandamus cause of action against him. The court granted the motion on the ground that the Commissioner does not have a mandatory, ministerial duty to afford plaintiff the requested relief and that to the extent the Commissioner is vested with the authority to do what plaintiff demands, the Commissioner's refusal to do so constitutes a proper exercise of his discretion, in a manner that was not arbitrary or capricious. Plaintiff filed a timely notice of appeal.

### Discussion

■ "An ordinary mandamus action under Code of Civil Procedure section 1085 permits judicial review of ministerial duties as well as quasi-legislative acts of public agencies. [Citation.] Mandamus lies to compel the performance of a clear, present, and ministerial duty where the petitioner has a beneficial right to performance of that duty. [Citation.] Mandamus may issue to correct the exercise of discretionary legislative power, *but only* if the action taken is so palpably unreasonable and arbitrary as to show an abuse of discretion as a matter of law." (*Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1264–1265 [4 Cal.Rptr.3d 536].) "We review de novo an order granting a motion to dismiss a petition for writ of mandate." (*Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1118 [23 Cal.Rptr.3d 282].) In doing so, we assume the truth of the allegations of the petition. (*Id.* at p. 1115.)

■ Initially, plaintiff contends that the Commissioner had a ministerial duty under sections 12926 and 12921 to enforce plaintiff's alleged rights under the Insurance Code. " 'A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. . . .'

[Citations.] Thus, '[w]here a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion.' " (*Carrancho v. California Air Resources Board, supra,* 111 Cal.App.4th at p. 1267, italics omitted.)

■ Contrary to plaintiff's argument, the Commissioner does not have a ministerial duty "to enforce the right to rescission under the Insurance Code belonging to [plaintiff] and the proposed class" and "to require that the corporate insurers return the premium that they collected from [plaintiff] and the proposed class under false pretenses—likewise required under the Insurance Code." Assuming (without deciding), as argued by plaintiff, that sections 330, 331, 481.5 and 483 entitle him and others to rescind their policies and obtain a refund of premiums,[3] nothing in those provisions requires the Commissioner to enforce plaintiff's rights in any particular manner. Plaintiff's reliance on the general enforcement provisions of the Insurance Code is misplaced. Section 12926 provides in full, "The commissioner shall require from every insurer a full compliance with all the provisions of this code." Section 12921, subdivision (a) provides, "The commissioner shall perform all duties imposed upon him or her by the provisions of this code and other laws regulating the business of insurance in this state, and shall enforce the execution of those provisions and laws." But the provisions relating specifically to enforcement concerning alleged insurer misconduct demonstrate that the decision to pursue particular remedies, or any remedy at all, falls within the Commissioner's discretion. (See, e.g., §§ 12921.1, subd. (a) ["The commissioner shall establish a program . . . to investigate complaints . . . and, when warranted, to bring enforcement actions against insurers . . . ."], 12921.4, subd. (a) ["The commissioner shall, if deemed appropriate, notify insurers . . . against whom the complaint is made of the nature of the complaint, may request appropriate relief for the complainant, and may meet and confer with the complainant and the insurer in order to mediate the complaint. This section shall not be construed to give the commissioner power to adjudicate claims."]; see also *People v. Karriker* (2007) 149 Cal.App.4th 763, 786 [57 Cal.Rptr.3d 412] [mandate is unavailable to compel conservator to file petition for conservatorship]; *West v. State of California* (1986) 181 Cal.App.3d 753, 764–765 [227 Cal.Rptr. 16] [initiation of proceedings to revoke contractor's license upon receipt of consumer complaints

---

[3] Under section 331, "[c]oncealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Section 330 defines concealment as the "[n]eglect to communicate that which a party knows, and ought to communicate." Section 481.5, subdivision (a), provides in relevant part that when "there is a reduction in coverage, the insurer shall tender . . . the amount of the unearned premium generated by the reduction in coverage, to the insured . . . ." Section 483, subdivision (a) provides that "[a] person insured is entitled to a return of the premium . . . [¶] . . . [w]hen the contract is voidable, on account of the fraud or misrepresentation of the insurer."

is vested in the sound discretion of the Contractors' State License Board]; *Heckler v. Chaney* (1985) 470 U.S. 821, 831 [84 L.Ed.2d 714, 105 S.Ct. 1649] ["[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. [Citations.] This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement."].)

■ Plaintiff argues, in the alternative, that the court erred in dismissing the petition for a writ of mandate because he alleged facts sufficient to show an abuse of discretion by the Commissioner. While "traditional mandate will lie to correct abuses of discretion, a party seeking review under traditional mandamus must show the public official or agency invested with discretion acted arbitrarily, capriciously, fraudulently, or without due regard for his rights, and that the action prejudiced him." (*Gordon v. Horsley* (2001) 86 Cal.App.4th 336, 351 [102 Cal.Rptr.2d 910]; see *Miller Family Home, Inc. v. Department of Social Services* (1997) 57 Cal.App.4th 488, 491 [67 Cal.Rptr.2d 171] ["Although traditional mandamus will not lie to control the discretion of a public official or agency, that is, to force the exercise of discretion in a particular manner, ' ". . . [it] will lie to correct abuses of discretion, and will lie to force a particular action by the . . . officer, when the law clearly establishes the petitioner's right to such action." ' "].)

In reviewing such decisions, " 'the trial court does not inquire whether, if it had power to act in the first instance, it would have taken the action taken by the administrative agency. The authority of the court is limited to determining whether the decision of the agency was arbitrary, capricious, entirely lacking in evidentiary support, or unlawfully or procedurally unfair.' [Citation.] . . . In applying this deferential test, a court ' "must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute." ' [Citations.] Courts exercise limited review 'out of deference to the separation of powers between the Legislature and the judiciary, to the legislative delegation of administrative authority to the agency, and to the presumed expertise of the agency within its scope of authority.' [Citations.] The court does not 'weigh the evidence adduced before the administrative agency or substitute its judgment for that of the agency, for to do so would frustrate legislative mandate.' " (*Carrancho v. California Air Resources Board, supra,* 111 Cal.App.4th at p. 1265.)

Under the facts alleged in the amended complaint and subject to judicial notice,[4] we cannot say that the Commissioner's decision to resolve issues concerning the insurers' claims procedures without obtaining the additional relief plaintiff prefers was an abuse of discretion. As set forth above, the Commissioner had no mandatory duty to pursue relief for every policyholder who was potentially impacted by the insurers' wrongful conduct. The record establishes that the Commissioner exercised his discretionary authority to investigate complaints against the insurers and to commence enforcement proceedings. Following an extensive investigation, the Commissioner entered into the settlement agreement requiring the insurers to reevaluate claims that had been improperly denied and imposing an $8 million penalty. Plaintiff has not alleged any facts suggesting that the Commissioner's investigation was inadequate in any respect and we must presume that the Commissioner complied with his official duties in conducting the investigation. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].) Moreover, it certainly was not unreasonable for the Commissioner to conclude that it was unnecessary to pursue additional relief for policyholders who had not yet submitted claims and whose potential future claims would be properly evaluated under corrected procedures adopted as the result of the settlement. Contrary to plaintiff's further argument, the fact that the results of the examination of the insurers' premiums were not made public does not demonstrate an abuse of discretion. Nor was the Commissioner required to provide a formal explanation for his decision. (See *Mahdavi v. Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 335 [136 Cal.Rptr. 421] ["Meaningful judicial review [under Code of Civil Procedure section 1085] does not require formal findings of fact, provided the court has an adequate record from which it can determine whether the agency's action was arbitrary, capricious or an abuse of discretion."].)

Plaintiff also contends that "it was error for the superior court to dismiss [his] claim against the Commissioner until adequate discovery was conducted and the facts relating to the Commissioner's exercise of his discretion were presented." But plaintiff suggests no specific uncertainties that might affect his right to a writ of mandate and justify discovery prolonging the proceedings against the Commissioner. Plaintiff's conclusory allegation that the Commissioner's decision "was arbitrary and capricious and an abuse of discretion" is insufficient to warrant further proceedings. (*Galbiso v. Orosi Public Utility Dist.* (2010) 182 Cal.App.4th 652, 673 [107 Cal.Rptr.3d 36] [" 'In order to state a cause of action warranting judicial interference with the

---

[4] The trial court took judicial notice of the settlement agreement. We grant the Commissioner's unopposed request that this court also take judicial notice of the settlement agreement. (Evid. Code, § 459.) Plaintiff's request that we take judicial notice of an order by the Commissioner in proceedings entitled "In the matter of Withdrawal of Policy Form Approval for UNUM Life Insurance Company et al." is denied on the ground of relevance.

official acts of the administrative body the plaintiff must allege more than mere conclusions of law; it must allege specific facts from which the conclusions entitling it to relief follow.' "].)

In summary, even on the questionable assumption that plaintiff and purported class members suffered economic harm as a result of the insurers' claim practices that have now been corrected, the Commissioner was not required to pursue any remedy on their behalf. Nothing in the record suggests that the decision not to pursue additional remedies was so unreasonable as to constitute an abuse of discretion. Hence, the trial court properly granted the Commissioner's motion to dismiss the cause of action seeking a writ of mandate.

### Disposition

The order dismissing the action against the Commissioner is affirmed.

McGuiness, P. J., and Jenkins, J., concurred.