Filed 5/21/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICK L. SCHWARTZ,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY et al.,<br><br>        Defendants and Respondents. | A134706<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-05-446073) |

An insured sued disability insurers alleging deceptive claims handling practices in violation of the unfair competition law (UCL) based upon the insurers' former practice of wrongfully denying benefits to some insureds. (Bus. & Prof. Code, § 17200 et seq.)[1] The trial court found that the insured, who was never denied benefits, lacked standing to pursue a UCL cause of action because the insured had not "suffered injury in fact" nor "lost money or property as a result of the unfair competition." (§ 17204.) The court granted summary adjudication in favor of the insurers on the UCL cause of action. We shall affirm the summary adjudication ruling and subsequent judgment.

## STATEMENT OF FACTS[2]

Defendants Provident Life and Accident Insurance Company and related companies (collectively, insurers) sell disability insurance that provides monetary

---

[1] All further section references are to this code except as noted.

[2] The statement of facts is drawn from the pleadings and facts stipulated by the parties for purpose of summary adjudication or otherwise undisputed. We deny the insurers' request for judicial notice of insurance audit reports that were not submitted to the trial court. The proffered materials are not relevant.

benefits to individuals who, due to injury or illness, are unable to work in their chosen occupations. Plaintiff Rick L. Schwartz is an insured under a policy he purchased in 1988 and maintains to date. Schwartz, a certified public accountant, chose the policy because he believed it was a good idea to "lock in a good premium" at a young age with a "non-cancelable, guaranteed renewable" policy. Schwartz pays a fixed monthly premium of $371.44 in exchange for the insurer's promise to pay a monthly benefit of $11,220 in the event of disability. Schwartz understood that his insurer would pay him the full benefits due under the policy if he became disabled, but would pay him no benefits and would retain the full amount of premiums paid if he did not become disabled. Schwartz has never become disabled and has never filed a claim for benefits.

In October 2005, the Commissioner of the California Department of Insurance (the commissioner) entered into a settlement agreement with the insurers resolving allegations that the insurers wrongly denied benefits to some insureds who had filed claims for benefits. Without conceding fault, insurers paid an $8 million civil penalty and agreed to re-evaluate claims previously denied and to modify their claims handling practices in the future.

Later that month, this action was filed on behalf of insureds who had not been denied benefits and therefore received no direct benefits from the settlement agreement. The operative second amended complaint filed by Schwartz pleads causes of action against the commissioner and the insurers. Schwartz alleged that the insurers operated a "systematic scheme" from 1994 to 2005 to deny and terminate legitimate disability claims by policyholders. Schwartz, and the purported class he represents, claimed injury from the alleged deceptive scheme despite no denial of benefits. Schwartz alleged that the insurers' "systematic scheme to deny and terminate claims eliminated coverage under the disability income polices for all policyholders and, therefore, effectuated a reduction in coverage across the entire policyholder class. As a result, plaintiff and the classes paid premium dollars for units of coverage that were never afforded under the disability income policies, and [the insurers] breached the policies by not providing the units of coverage that plaintiff and the classes purchased with their premium payments.

Moreover, given that the disability income policies were non-cancelable and guaranteed renewable, [the insurers were] prohibited from raising premiums for any reasons. Reducing coverage functioned as a *de facto* increase in premiums because coverage was eliminated but premiums remained the same. By increasing the premiums, [the insurers] breached the contracts of insurance with its policyholders and collected excessive premiums during the conspiracy period."

Schwartz sought a writ of mandate to compel the commissioner to reopen his investigation and to accord relief to policyholders who, like Schwartz, had not been denied benefits but suffered the "economic injury" he posited. Schwartz stated several causes of action against the insurers, including a claim that their alleged deceptive claims handling practices violated the UCL.

The trial court dismissed the mandamus cause of action against the commissioner and we subsequently affirmed that order. (*Schwartz v. Poizner* (2010) 187 Cal.App.4th 592.) We held that "even on the questionable assumption that [Schwartz] and purported class members suffered economic harm as a result of the insurers' claim practices that have now been corrected, the Commissioner was not required to pursue any remedy on their behalf" and his decision not to pursue additional remedies was not an abuse of discretion. (*Id.* at p. 600.)

In July 2011, for lack of standing, the trial court granted summary adjudication to the insurers on the UCL cause of action. (Code Civ. Proc., § 437c, subd. (f)(1).) The UCL provides relief to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204.) The court found that Schwartz failed to meet this standing requirement, noting that Schwartz "continues to pay his premiums, continues to have the identical coverage he always had, and has never filed a claim and has never had a claim denied." Schwartz voluntarily dismissed his remaining causes of action and judgment was entered for the insurers. This timely appeal followed.

## DISCUSSION

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.' (§ 17200.) Its

3

purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' " (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320.) In 2004, the electorate "materially curtailed the universe of those who may enforce" UCL provisions. (*Ibid.*) The UCL was amended to confine standing to those actually injured by a defendant's business practices. (*Id.* at p. 321.) As amended, the UCL provides that an individual may not prosecute a UCL claim unless the individual "has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204.) "[P]roof of lost money or property will largely overlap with proof of injury in fact" and satisfy both elements. (*Id.* at p. 325 & fn. 8.) Proof of lost money or property—economic injury—may be shown in many ways: "A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." (*Id.* at p. 323.)

Schwartz has failed to raise a material triable issue of fact that he suffered economic injury of any kind. Schwartz paid a fixed premium for a promise of disability coverage that was never denied. He did not lose money or property by the alleged wrongful denial of benefits to *other* policy holders using unfair claim practices that are now enjoined by the commissioner. On the motion for summary adjudication, Schwartz's claim of economic injury rested upon an economist's analysis.[3] The economist reasoned as follows: "the premium for individual members of the pool (policyholders) is established, in large part, by estimating the aggregate promised benefits to be provided to the members of the pool. This evaluation is performed on the basis of that risk pool, not

---

[3] Schwartz failed to incorporate the economist's declaration into his separate statement of facts and the trial court said it would disregard the declaration on that basis. (Code Civ. Proc., § 437c, subd. (b)(3).) However, the court also said that no economic injury was established even if the declaration were considered. Schwartz asks us to consider the declaration on appeal and we have done so.

4

on an individual basis. An insurance company who promises X benefits for a product and deliberately and systematically delivers 0.5X benefits by improperly denying some promised benefits harms all members of the risk pool (all policyholders), as well as the individual policyholders making claims under the policies at issue. All policyholders are harmed because they paid for X benefits and received, not by chance, significantly less than X benefits. The [insurer] defendants' claims settlement scheme lowered the expected value of the disability policy by reducing the expected benefit ratio." (Fn. omitted.)

The economist's analysis posits no more than a potential harm to the purported class of policy holders. The posited harm is potential — not actual — because only those policyholders denied benefits actually lost money. A disabled policy holder wrongly denied income benefits would dispute the supposition that his or her economic injury was comparable to the abstract economic injury of an able-bodied policy holder who never needed or sought benefits. Schwartz's theory ignores the fact that the insurers' practices have now been modified. Whatever financial loss he would have suffered had he become disabled and been denied benefits in the past, he in fact did not become disabled, and should he suffer a disability in the future he presumably will receive all the benefits to which he is entitled.[4] The economist's theory of economic injury based on group harm disregards the UCL's requirement of individual harm. It is the individual plaintiff who must have "lost money or property as a result of the unfair competition," not a group to which the individual belongs. (§ 17204.) The economist posits that the group of all policy holders "paid for X benefits" and, as a group, were denied X benefits. It remains the case, however, that Schwartz himself paid for X benefits and was never denied (and presumably never will be denied) X benefits. Schwartz's claim that group harm

---

[4] While the insurers' practices had not been modified during the period to which the complaint refers, the possibility of a change of policy always existed. Hence, regardless of the settlement subsequently reached with the commissioner, harm to Schwartz was no more than a potentiality and entirely speculative unless and until he became disabled.

establishes standing for any member of the group would eviscerate the UCL's individual standing requirement.[5]

Our finding of a lack of standing under the UCL is consistent with federal authority raising similar issues. In *Impress Communications v. Unumprovident Corp.* (C.D. Cal. 2003) 335 F.Supp.2d 1053, 1055-1056, a purported class of insureds sued several disability insurance companies, including defendants here. Plaintiffs claimed the insurers used deceptive claims handling practices to wrongfully deny benefits to some insureds and that this constituted a fraud upon all policy holders, even those like themselves who never filed a claim for benefits. (*Id.* at p. 1056.) The court dismissed the case for lack of standing, finding that plaintiffs suffered no legally cognizable injury. (*Id.* at pp. 1059, 1065.) In doing so, the court rejected the theory, propounded here, that the value of plaintiffs' insurance was diminished by the insurers' improper claims procedures that denied benefits to other insureds. (*Id.* at pp. 1057-1059.) The court found that plaintiffs had not been provided fewer benefits than they contracted for and thus their claimed injury was "purely speculative and insufficient to confer standing." (*Id.* at p. 1059.) We reach the same conclusion.

## DISPOSITION

The judgment is affirmed.

---

[5] Schwartz's reliance at oral argument on *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093 is misplaced for numerous reasons. Although the plaintiffs in that case alleged that they did not receive the coverage they expected when the insurer changed the form of its policies, each of the plaintiffs alleged he or she had suffered actual earthquake damage that apparently was not covered under the revised policies. The case addresses several issues concerning the right to bring an action against the insurers under Business and Professions Code section 17200 based on conduct that also violates Insurance Code section 790.03 but had no occasion to, and did not, discuss any issue of standing, much less standing of persons who had suffered no actual damages. Moreover, and most importantly, that case was decided many years before the statute was amended in 2004 to restrict the standing of private persons to those who have "suffered injury in fact and . . . lost money or property as result of the unfair competition." (Prop. 64, § 3, approved Nov. 2, 2004.)

6

_____
Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.

Superior Court of the City & County of San Francisco, No. CGC-05-446073, Richard A. Kramer, Judge.


Counsel for Plaintiff and Appellant:       SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP, Todd M. Schneider, Mark T. Johnson

      BERGER & MONTAGUE, P.C., Steven L. Bloch, Peter R. Kahana

Counsel for Defendants and Respondents:       PIERCE ATWOOD LLP, Gavin G. McCarthy

      WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, Francis Torrence