Filed 7/29/14  Akinshin v. Bank of America CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WALTER AKINSHIN et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>        Defendant and Respondent. | A138098<br><br>(Marin County<br>Super. Ct. No. CIV1103188) |

Walter and Nina Akinshin (the Akinshins, collectively, and Walter or Nina, individually) sued Bank of America, N.A. (BANA), and others who are not parties to this appeal, based on circumstances attendant to the 2007 refinance of their home mortgage loan and their failed attempt to obtain a loan modification in 2010, after they had ceased making their mortgage payments.  The defendants successfully demurred to the Akinshins' original complaint and first amended complaint.  The Akinshins filed a second amended complaint (SAC), stating causes of action for fraud and deceit, negligence, promissory estoppel, and violation of the Unfair Competition Law (UCL).  BANA again demurred and the trial court sustained the demurrer without leave to amend, because causes of action based on the 2007 loan origination were time-barred and the SAC otherwise failed to plead facts necessary to maintain the remaining causes of action.  The court subsequently dismissed the Akinshins' lawsuit.

On appeal, the Akinshins maintain that the statute of limitations should be tolled by application of the discovery rule and that they alleged facts sufficient to maintain each of their causes of action.  We agree that the trial court erred in sustaining BANA's

1

demurrer as to each of the causes of action stated in the SAC and reverse. Because all of the causes of action survive without considering the allegations concerning the 2007 loan origination, we do not reach the issue of whether remedies based on the loan origination are time-barred.

## BACKGROUND

### I. *Factual Background* [1]

In 2007, the Akinshins contacted Freedom Financial Center, Inc. (Freedom), a mortgage broker, to refinance a prior mortgage loan on their residence at 28 Ayala Court, San Rafael, California. They communicated primarily with Charles Teed.[2] The Akinshins told Charles that their combined monthly income was about $7,666 per month from Nina's work at Nordstrom's and Walter's work as the owner of a service station.

On March 1, 2007, a uniform residential loan application was signed with the Akinshins' names but the Akinshins believe those signatures to be forgeries. The application was prepared by William Teed as an employee of Freedom. A second loan application was signed on March 21, 2007, this time by the Akinshins themselves. The second application was also prepared by William, identified as an employee of Countrywide Bank, FSB (Countrywide). Both applications indicated that the Akinshins had a combined monthly income of $24,200.

On March 18, 2007, the Akinshins received an $825,000 7-year fixed rate and 23-year adjustable rate mortgage, as well as a $165,000 home equity line of credit (HELOC) from Countrywide. The loan closing occurred at the Akinshins' home with only the Akinshins and a notary public present. The closing process lasted between 45 minutes and one hour and no one explained the terms and consequences of the loan to the Akinshins. The Akinshins were unaware that the loan contained a large balloon payment.

---

[1] As we discuss below, in an appeal from the grant of a demurrer, we accept as true the facts as stated in the complaint. Accordingly, the facts stated here are those alleged in the SAC.

[2] The Teed's first names are used for the sake of clarity. No disrespect is intended.

Even though Charles told the Akinshins that the interest rate would be fixed for the first seven years, their payments were to increase after three years. The "TILA disclosure statement"[3] also stated that the payments would be fixed for seven years.

When the Akinshins realized they were receiving a HELOC, they called Charles for clarification and left a message. Charles returned the call a few days later and said that he did the best he could for the Akinshins, even though they had not previously discussed a HELOC. Charles explained that the HELOC was necessary because the loan-to-value ratio would be too high for the underwriters to grant the entire $880,000 loan amount that the Akinshins had requested. Charles decided to obtain the HELOC to reduce the size of the primary loan.

Charles did not notify the Akinshins that he and Freedom would receive yield spread premiums and other fees from Countrywide in the amount of $27,843.75.

BANA is the successor in interest to Countrywide. At the end of 2008 and beginning of 2009, the Akinshins contacted BANA for a loan modification. They completed the loan modification application, but 30 days later were told they did not qualify. In early 2009, the Akinshins worked with an organization called ACORN, to which they paid no fees, to help them apply for a modification, but they were again denied. In July 2009, the Akinshins hired a third party to help them obtain a modification.

In July or August 2009, the Akinshins stopped making their regular monthly mortgage payment.

In January 2010, Eric John, an employee of BANA, informed "Daly, agent for plaintiffs" that the Akinshins qualified for a loan modification. On February 18, 2010, "Gail #NBKRZVW," an employee of BANA, informed Daly that the Akinshins qualified for a loan modification so long as they made timely payments throughout a 90-day trial

---

[3] The SAC does not define "TILA," which we assume refers to the Truth in Lending Act. (15 U.S.C. § 1601 et seq.)

3

period. On the same day, Tiffany Fletcher, another employee of BANA, confirmed that the Akinshins were accepted into the trial modification program.[4]

On March 10, 2010, "Jacob #9359," an employee of BANA, told Daly that the Akinshins' loan modification was under consideration. Jacob instructed Daly to call back periodically.

On May 14, 2010, Gail told Daly that the Akinshins qualified for a loan modification and would receive the necessary paperwork. On the same day, a BANA employee named Taz contacted the Akinshins, requested additional financial documentation, and assured them that they qualified for a loan modification.

The trial modification period was extended to end in December 2010. During the trial modification period, the Akinshins timely made each payment of approximately $1,891. The Akinshins made their final trial payment in December 2010, but BANA denied them a permanent loan modification, stating that their income was insufficient. BANA had been aware of the Akinshins' income throughout the entire time that their application for a loan modification was under consideration.

## II. *Procedural Background*

On June 24, 2011, the Akinshins filed a complaint, asserting nine causes of action and naming as defendants BANA, as successor in interest of Countrywide; Freedom; Charles; William; and BAC Home Loans Servicing, LP (BAC). On October 4, 2011, BANA filed a demurrer, which the Akinshins opposed.

On December 19, 2011, the Akinshins dismissed their suit against Charles.

On February 23, 2012, the court sustained BANA's demurrer with leave to amend. The Akinshins then filed a first amended complaint, asserting five causes of action, with BANA the only named defendant. On March 28, 2012, BANA filed a demurrer, which

---

[4] The SAC contains no allegation that the trial modification program was related to the federal government's Home Affordable Modification Program (HAMP). Accordingly, we regard the trial program at issue in this case as an in-house program that is not governed by HAMP regulations.

4

the Akinshins opposed. On July 17, 2012, the court sustained BANA's demurrer, again with leave to amend.

In August 2012, the Akinshins filed the SAC. This complaint again named BANA, Freedom, Charles, William, and BAC, even though no cause of action was asserted against BAC. The complaint asserted four causes of action: (1) fraud and deceit against Freedom, Charles, William, and BANA, but specifically alleging only statements made in 2010 as being false or misleading; (2) negligence against BANA; (3) promissory estoppel against BANA; and (4) violation of the UCL (Bus. & Prof. Code, § 17200 et seq.) against BANA.

The Akinshins attached a copy of the deed of trust as an exhibit to the SAC. The deed of trust refers to an adjustable rate rider, which was not attached as an exhibit. Although the allegations in the SAC refer to two uniform residential loan applications and the TILA disclosure statement, these documents were also not attached as exhibits.

In September 2012,[5] BANA "for itself and as successor by merger to BAC Home Loans Servicing, LP (sued erroneously as 'Bank of America, NA as successor in interest of Countrywide Bank, FSB')," filed a demurrer to the SAC. The Akinshins opposed the demurrer. In their opposition, the Akinshins noted that the first cause of action incorporated the general allegations that preceded it and their arguments make clear their intention that the first cause of action include alleged deceptive conduct and concealment related to the 2007 loan origination, even though only alleged misrepresentations concerning the 2010 loan modification application were directly included under the first cause of action. As they had previously argued, the Akinshins maintained that the first cause of action was not barred by the statute of limitations because "equitable tolling under the discovery rule applies."

On December 14, 2012, the court sustained BANA's demurrer without leave to amend. The court stated that "[p]laintiffs do not explain how any claim arising from the

_____

[5] The demurrer in the record before us is internally dated September 26, 2012, but a copy date-stamped by the clerk of the court to show the filing date was not provided in parties' appendices.

5

loan origination would not be barred by the statute of limitations." The court sustained BANA's demurrer to the first cause of action because BANA's representations to the Akinshins did not amount to a promise that BANA would grant a permanent loan modification and the Akinshins also failed to plead facts demonstrating reliance. The court sustained BANA's demurrer to the second cause of action because the SAC "still does not specify BANA's alleged duty or the particular 'conduct' by BANA which was negligent and caused plaintiffs harm." The court sustained BANA's demurrer to the third cause of action because "the alleged promise continues to be unclear and ambiguous" and the SAC failed to plead facts that demonstrated detrimental reliance. The court sustained BANA's demurrer to the fourth cause of action because any claim arising from the loan origination would be time-barred, no facts were alleged to support other conclusory allegations, and the cause of action was otherwise derivative to the other failed causes of actions.

On January 2, 2013, the Akinshins dismissed William and Freedom as defendants.

On January 14, 2013, the court entered judgment, dismissing the Akinshins' action against BANA with prejudice.

On March 8, 2013, the Akinshins timely filed a notice of appeal.

## DISCUSSION

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.' " (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We do not, however, assume as fact contentions, deductions or conclusions of fact or law that may be stated in the complaint. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506.)

In reviewing an order sustaining a demurrer, "we look 'only to the face of the pleadings and to matters judicially noticeable . . . .' [Citation.] We are 'not bound by the trial court's construction of the complaint . . . .' [Citation.] Rather, we independently evaluate the complaint, construing it liberally, giving it a reasonable interpretation, if

6

possible, and reading it as a whole, while viewing its parts in context. [Citation.]" (*Cobb v. O'Connell* (2005) 134 Cal.App.4th 91, 95.) "[A] demurrer [is not] the appropriate procedure for determining the truth of disputed facts or what inferences should be drawn where competing inferences are possible." (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 635.)

We examine each of the Akinshins causes of action and conclude that even though the SAC is not a model of clarity, the complaint alleges facts sufficient to state each cause of action.

## I. *Fraud and Deceit*

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 772, p. 1121; see also Civ. Code, § 1709.)[6] A plaintiff must plead " '*facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' [Citation.] A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater. In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) Plaintiffs pleading fraud or deceit must also "specifically allege their damages and how their reliance on [the misrepresentation] caused those damages." (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1501.)

Among the SAC's general allegations, the Akinshins alleged that BANA told them that if they made timely payments during a trial modification period, they would be granted a permanent loan modification. The Akinshins alleged four misrepresentations.

---

[6] The Akinshins have not argued and the parties have not briefed an alternative fraud claim based upon a promise made without intention to perform. Consequently we do not examine the SAC for any such claim.

First, in January 2010, BANA informed the Akinshins' agent that they "qualified" for a loan modification. Second, in February 2010, BANA told the agent that the Akinshins were accepted into a trial modification program and that they were "qualified" for a loan modification if they made the trial payments. Third, in March 2010, while participating in the trial modification program, BANA told the agent that the Akinshins' loan modification was being "considered." Finally, in May 2010, BANA told the agent that the Akinshins "qualified for a loan modification [and] would receive the necessary paperwork" and on the same day separately asked for additional financial documentation to support the application. In December 2010, BANA denied the loan modification because of insufficient income.

The alleged misrepresentations are pleaded with specificity. In each case, the representation is clearly stated along with why the Akinshins believe it to be a misrepresentation; the identities of the speakers are provided, along with their roles as employees of BANA; the person to whom the representations were made is identified; and the dates of the representations are provided.

In sustaining BANA's demurrer, the trial court stated: "[T]he allegations remain insufficient to show that the February 18, 2010 representation by [Gail]—that plaintiffs 'qualified for a loan modification so long as plaintiffs made timely payments throughout the Trial Period' [citation]—had the same meaning that "if [plaintiffs] made their payments on time during this Trial Period, BAC would grant a permanent modification' [citation]. . . . The SAC sets . . . forth [further] representations by [Gail] and [Jacob] as consistent representations—but the only way to reconcile them is to view Gail's use of the word 'qualified' to mean some type of eligibility, not final approval."

At oral argument on appeal, the Akinshins' counsel criticized the trial court for giving the word "qualify" a fixed meaning when the word can have multiple meanings. He quoted Justice Traynor: "The exclusion of testimony that might contradict the linguistic background of the judge reflects a judicial belief in the possibility of perfect verbal expression. [Citation.] This belief is a remnant of a primitive faith in the inherent potency and inherent meaning of words." (*Pacific Gas & Elec. Co. v. G. W. Thomas*

8

*Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 37, fns. omitted.)  We find this quotation apt, because in focusing on "qualify" as denoting eligibility and not final approval, the trial court rejected other reasonable interpretations of the alleged representations, in violation of the principle that demurrer is not the procedure for determining which inferences should be drawn when competing inferences are possible.

Here, another possible meaning of Gail's representation that the Akinshins "qualified for a loan modification so long as [the Akinshins] made timely payments throughout the Trial Period" is the meaning that the Akinshins ascribed—that making timely payments throughout the trial period was all that was necessary to be offered a permanent loan modification.  We disagree with the trial court that the other representations necessarily contradict that meaning.  On March 10, 2010, Jacob told the Akinshins' agent that the loan modification was being "considered," but this was still during the trial period, so the Akinshins' ability to satisfy the condition of making timely payments during that period was still in question.  On May 14, 2010, Gail told the Akinshins' agent that they "qualified for a loan modification [and] would receive the necessary paperwork"—a representation that reinforces the Akinshins' understanding.  That they were also separately asked, on the same day, to provide additional financial documentation does not necessarily call that understanding into doubt because the content of the documentation is not specified.  BANA may simply have requested up-to-date bank and credit statements that would not have affected the Akinshins' qualification for a loan modification unless they materially differed from earlier statements already provided to BANA.

We note that whatever was said by the BANA representatives was communicated to Daly, not the Akinshins, and that we do not know what was actually said.  However, as already noted, on demurrer we are bound to accept plaintiffs' allegations as facts.  We conclude that the Akinshins sufficiently pleaded the element of misrepresentation.

The trial court also held that the Akinshins did not adequately plead justifiable reliance or damages.  We disagree because the SAC alleges that the Akinshins "held off making alternative arrangements with regard to their loan and their living situation" and

"passed up opportunities to declare bankruptcy." "Forbearance—the decision not to exercise a right or power—is sufficient . . . to fulfill the element of reliance necessary to sustain a cause of action for fraud or negligent misrepresentation." (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 174.) We may infer the element of damages from the alleged forbearance[7]—that the Akinshins, paid money to BANA during the trial period that they would not otherwise have paid had they made "alternative arrangements" or declared bankruptcy.

BANA contends that the Akinshins were already contractually bound by their mortgage to make (even larger) payments to BANA during the trial period and rely on *Auerbach v. Great Western Bank* (1999) 74 Cal.App.4th 1172, 1185 (*Auerbach*): "Respondents' theory of recovery is based on the premise that a party duped into performing an existing contractual obligation has suffered damage. More specifically, they believe a borrower's reliance on a lender's fraudulent promise to engage in good faith negotiations to modify a loan, which causes the borrower to continue to make payments on a note secured by a seriously undervalued property, supports the reliance damages necessary to a fraud claim. [¶] Generally speaking, a commitment to perform a preexisting contractual obligation has no value. In contractual parlance, for example, doing or promising to do something one is already legally bound to do cannot constitute the consideration needed to support a binding contract. [Citations.] [¶] The same understanding has carried over to the tort area."

The defendants in *Auerbach* were not in default on their loan, nor does the opinion indicate that they even considered bankruptcy proceedings. (*Auerbach*, *supra*, 74 Cal.App.4th at p. 1179.) Because possible bankruptcy proceedings are alleged here, we find *Aceves v. U.S. Bank* (2011) 192 Cal.App.4th 218 (*Aceves*) more relevant to our analysis. In *Aceves*, the borrower was in arrears on a residential home loan and filed for bankruptcy. (*Id.* at p. 221.) "Plaintiff contacted the bank, which promised to work with

---

[7] The damages we infer here are explicitly stated in the cause of action for promissory estoppel.

10

her on a loan reinstatement and modification if she would forgo further bankruptcy proceedings. In reliance on that promise, plaintiff did not convert her bankruptcy case to a chapter 13 proceeding or oppose the bank's motion to lift the bankruptcy stay." (*Ibid.*) After the bankruptcy court lifted the stay, the bank foreclosed on the property instead of working with the plaintiff to reinstate and modify the loan. (*Ibid.*) The trial court dismissed the case on demurrer, but the *Aceves* court reversed, holding that the complaint demonstrated detrimental reliance. (*Id.* at pp. 221-222.)

While it is true that the Akinshins had a contractual obligation to make payments to BANA, they were already in default on their loan. We infer from their complaint that they considered bankruptcy, an option they did not pursue because of BANA's representations that they qualified for a loan modification. In light of these representations, they resumed making (reduced) payments to BANA—payments they would not have made absent BANA's representations. Considering the totality of the alleged circumstances and the example of *Aceves*, we are unable to determine at the demurrer stage that general principles, as a matter of law, preclude the Akinshins from alleging reliance and damages related to their payments to BANA. A trier of fact might conclude, after both sides have presented their evidence, that the Akinshins suffered no cognizable damage, but that is not a matter for determination at demurrer.

## II. *Promissory Estoppel*

"Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.'" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) "The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'" (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901.) "The party claiming [promissory] estoppel must specifically plead all facts relied on to establish its elements." (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 48.)

11

In sustaining the demurrer to the cause of action for promissory estoppel, the trial court stated: "The court's prior order observed that plaintiffs had not alleged a 'promise clear and unambiguous in its terms' or injury resulting from their reasonable and foreseeable reliance. As explained above [referring to the discussion sustaining the demurrer to the cause of action for fraud], the alleged promise continues to be unclear and ambiguous."

As we discussed in relation to the cause of action for fraud, BANA's representations can be understood with the meaning that the Akinshins attribute to them. Although the trial court understood those representations, considered together, in another way, the February 2010 representation that the Akinshins were qualified for a modification if they made timely payments during the trial period is sufficiently clear and unambiguous for pleading purposes. Whatever the meaning of the word "qualify," the Akinshins relied on the representations and made timely payments during the trial period, only to be told in December 2010 that they did not have sufficient income for a loan modification.

"To be enforceable, a promise need only be ' "definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.' " (*Aceves*, *supra*, 192 Cal.App.4th at p. 226.) Here, the duty on the part of the Akinshins is definite—to make timely payments during the trial period (initially 90 days and then extended to the end of the year). If the Akinshins performed their duty, they were "qualified" for a loan modification—implying a duty on the part of the bank to offer the Akinshins a loan modification unless the bank learned new facts that would affect their "qualification." Here the bank ultimately told the Akinshins that they had insufficient income, but this was not a new fact because the Akinshins alleged that the bank was at all times aware of their income. Accordingly, we conclude that the Akinshins have pleaded an enforceable promise.

The Akinshins alleged that they relied on BANA's promise by making payments during the trial period. There is no doubt that such reliance was foreseeable because it

12

was an explicit condition on the promise. The trial court held that "it was not reasonable for plaintiffs to rely on a mere oral promise," but we disagree. Whether reliance was reasonable is a disputed question of fact that is not appropriately decided on demurrer—otherwise, it is hard to see how an oral promise could ever survive demurrer.

The Akinshins alleged that they were injured "in that [they] made the modified payments and never received a permanent modification" and were damaged "in that they will lose their home and will unlikely be able to purchase a new home." We concluded in discussing the cause of action for fraud that making payments during the trial period is a sufficient allegation of damage to survive demurrer.

We conclude that the Akinshins complaint alleged facts sufficient to state a claim for promissory estoppel.

### III. *Negligence*

"The complaint in an action for damages for negligent injury to person or property must allege (a) the defendant's legal duty of care toward the plaintiff [citation]; (b) the defendant's breach of duty—the negligent act or omission [citation]; (c) injury to the plaintiff as a result of the breach—proximate or legal cause [citation]; and (d) damage to the plaintiff [citation]." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 576, p. 701.)

The Akinshins alleged that BANA "acted negligently, in failing to provide plaintiffs with accurate information regarding the status of their loan modification when it was in a position to do so." In sustaining BANA's demurrer to the cause of action for negligence, the court stated: "Plaintiffs' pleading still does not specify BANA's alleged duty or the particular 'conduct' by BANA which was negligent and caused plaintiffs' harm . . . ." We disagree. Construing the complaint liberally and reading it as a whole, we construe the cause of action for negligence as one for negligent misrepresentation, providing an alternate legal theory to fraud (intentional misrepresentation) and promissory estoppel. Under this construction, BANA's duty not to negligently make misrepresentations is clearly implied and the misrepresentations are explicitly alleged.

13

BANA relies on the general rule that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096.) "Such 'general rule' has often been repeated, including in . . . cases decided in the context of loan modification applications." (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 898, fn. omitted.) However, "[e]ven when the lender is acting as a conventional lender, the no-duty rule is only a general rule. [Citation.] As a recent federal case put it: '*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower. Rather, the *Nymark* court explained that the question of whether a lender owes such a duty requires "the balancing of [the '*Biakanja* factors'] . . . ." ' "[8] (*Jolley*, at pp. 901-902, quoting *Newson v. Countrywide Home Loans, Inc.* (N.D. Cal. Nov. 30, 2010, No. C 09-5288) 2010 WL 4939795, at p. *5.)

A bank does have a duty, even when acting within its conventional role as a lender of money, "to not make material misrepresentations about the status of an application for a loan modification . . . . It is foreseeable that a borrower might be harmed by an inaccurate or untimely communication . . . about the status of a loan modification application, and the connection between the misrepresentation and the injury suffered could be very close." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 68-69.) We have already dealt with the elements of injury and damage in considering the causes of action for fraud and promissory estoppel. Accordingly, the SAC sufficiently states a cause of action for negligent misrepresentation.

---

[8] The *Biakanja* factors are six nonexhaustive factors: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm. (*Biakanja v. Irving* (1958) 49 Cal.2d 647, 650.)

**IV.** *Unfair Competition*

The UCL "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.' ([Bus. & Prof. Code,] § 17200.) Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' [Citations.] In service of that purpose, the Legislature framed the UCL's substantive provisions in ' "broad, sweeping language" ' [citations]." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320.) "[A]n individual may not prosecute a UCL claim unless the individual 'has suffered injury in fact and has lost money or property as a result of the unfair competition.' ([Bus. & Prof. Code,] § 17204.)" (*Schwartz v. Provident Life and Accident Ins. Co.* (2013) 216 Cal.App.4th 607, 611.)

In sustaining BANA's demurrer to the cause of action for violation of the UCL, the trial court stated: "[T]he cause of action depends on prior allegations, which are deficient as stated above." Because we have determined that the Akinshins' complaint sufficiently states causes of action for fraud and negligent misrepresentation, we conclude that the alleged misrepresentations by BANA are also sufficient to maintain a cause of action under the UCL. Construing the complaint liberally, the modified loan payments alleged in the preceding causes of action constitute injury in fact and lost money.

**V.** *The 2007 Loan Origination*

In their opposition to BANA's demurrer, the Akinshins argued that the cause of action for fraud was meant to incorporate the earlier allegations concerning the 2007 loan origination, despite the fact that under that cause of action the SAC listed only alleged misrepresentations concerning their efforts to obtain a loan modification in 2010. However, at oral argument on appeal, the Akinshins' counsel conceded that allegations concerning the 2007 loan origination relate only to the cause of action for violation of the UCL.

Actions for relief on the ground of unfair competition are subject to a four-year statute of limitations. (Bus. & Prof. Code, §§ 17208, 17200.) The Akinshins received

15

their loan on March 18, 2007, but they did not file a complaint until June 24, 2011. The Akinshins argue that the "discovery rule"[9] should apply to toll the statute of limitations.

Because we have determined that all four of the Akinshins' causes of action survive demurrer based on allegations concerning their efforts to obtain a loan modification in 2010, we have no cause to further consider whether any claims related to the 2007 loan origination will be time-barred as this matter proceeds.

---

[9] "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.] An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.] [¶] A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citations.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806-807 (*Fox*).)

## DISPOSITION

The judgment is reversed, and the matter is remanded with directions to the trial court to vacate its order sustaining the demurrer to the SAC and to enter a new order overruling the demurrer.  The Akinshins are awarded their costs on appeal.

_____
Brick, J.*

We concur:

_____
Kline, P.J.

_____
Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17